UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SKYLER GODFREY,

           Plaintiff,

v.

MAX CONSTRUCTION, INC., a Colorado corporation,

           Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Skyler Godfrey, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint and Jury Demand against MAX CONSTRUCTION, INC. ("MAX" or the "Company"), states and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an employment discrimination case arising from Defendant's termination of Plaintiff for quarantining due to developing symptoms related to COVID-19 pursuant to an order from Boulder County Public Health, and for requesting and taking leave under the Emergency Paid Sick Leave Act ("EPSLA") and Families First Coronavirus Response Act ("FFCRA"), in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

2. More specifically, on March 16, 2020, Plaintiff received a positive three-month performance review, in addition to a raise in pay. Three days later, on March 19, 2020, Plaintiff was exposed to COVID-19 and began experiencing symptoms of the coronavirus. He received a

1

notification from Boulder County Public Health requiring him to quarantine until he was symptom-free for 14 days.  Plaintiff accordingly worked from home until on or about April 7, 2020, though his employer was less than pleased and agreed to pay Plaintiff only a prorated portion of his salary for the work he performed remotely.

3. Plaintiff's partner, who had also been exposed to COVID-19, was eight and a-half months pregnant when Plaintiff was ordered to quarantine.  On April 7, 2020, Plaintiff engaged in the protected activity of requesting and taking leave under the FFCRA after being advised by a health care provider to quarantine for the birth of his daughter, which occurred on April 12, 2020.  The Company tellingly did not respond to Plaintiff's request for leave under the FFCRA, despite Plaintiff providing a doctor's note with the requisite information qualifying him for such leave.

4. On April 14, 2020, Plaintiff again followed up on his request for leave via email, stating that he would be able to return to work on April 20, 2020.  The Company, again, did not respond.  On April 17, 2020, Defendant emailed Plaintiff terminating his employment and specifically citing Plaintiff's use of leave as the reason for his termination (e.g., "We revisited our recent [performance] review with you and came to the conclusion that although you have performed in some areas, the key requirements we depend on from our superintendents as managers are not fully developed … Unfortunately, your family dynamic demanded you make a decision during a critical time of your career development and now … we have less time for focused training.  We concluded that the learning curve required to fill our needs as the superintendent position forces us to realize your current level of experience … would require more training to bring you to the level of expectation that we can currently focus on.").  Defendant additionally refused to pay Plaintiff any paid leave entitlements under the EPSLA and FFCRA.

## PARTIES

5. At all times relevant to this Complaint, Plaintiff is and was a resident of Colorado.

6. At the time of Plaintiff's request for and use of leave, Plaintiff was a covered and eligible employee under the FFCRA (Division E, §§ 5105 to 5111 (Pub. L. No. 116-127)), and under the Expanded Family Medical Leave Act ("EFMLA", 29 U.S.C. §§ 2611(2) and 2620).

7. Defendant MAX CONSTRUCTION, INC. ("MAX" or the "Company") is, and at all times relevant to this Complaint was, a Colorado corporation with a principal office at 835 Delaware Street, Denver, Colorado 80204-4533.

8. Defendant was a covered employer under the EPSLA and EFMLA sections of the FFCRA, in that it employed fewer than 500 employees.

## JURISDICTION AND VENUE

9. Plaintiff incorporates by reference the above paragraphs as though set forth separately and fully herein.

10. The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claim is so related to the federal claims that they form part of the same case or controversy.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

13. Plaintiff began working for the Company as a Superintendent on or about December 16, 2019.

14. At all times during his employment with Defendant, Plaintiff met or exceeded the Company's legitimate performance expectations.

15. For example, at Plaintiff's three-month performance review, Plaintiff received positive feedback about his performance, as well as a raise.

16. The Company never raised any issues related to Plaintiff's performance, or his qualifications for his position, prior to his request for and use of leave under the EPSLA.

17. In March 2020, shortly after the coronavirus pandemic became a worldwide pandemic initiating shutdowns, lockdowns, and closures of companies and schools throughout Colorado; Plaintiff and his partner began experiencing coronavirus symptoms after being exposed to someone who tested positive for COVID-19.

18. Congress passed the FFCRA in response to the growing public health emergency posed by COVID-19 and the global pandemic that it caused. The FFCRA was signed into law on March 18, 2020, and it became effective on April 1, 2020.

19. Shortly after his exposure and development of COVID-like symptoms, on or about March 21, 2020, Plaintiff received a letter from Boulder County Public Health ("BCPH") that was a "Notice of Quarantine/Isolation." The letter stated, in pertinent part:

> Boulder County Public Health (BCPH) has determined that you were recently exposed to 2019 Novel Coronavirus disease, referred to in this document as COVID-19.
>
> Colorado Revised Statues § 25-1-506(3)(b) authorizes local public health agencies to issues orders to control the spread of communicable diseases, such as COVID-19. This authority includes the establishment, maintenance, and enforcement of isolation and quarantine, as necessary, to

> protect public health and prevent further spread of diseases. In order to protect the public's health and prevent any potential further spread of COVID-19, we are asking that you comply as indicated below.
>
> If you remain symptom-free for 14 days following your last known exposure, you are no longer at risk from that specific exposure. …
>
> **Stay home, except to get medical care**
>
> …
>
> **Do not go to work.** Working from a home-based office is permitted.

20. Plaintiff informed the Company's President, Alex Szollosi, that he and his partner had been advised to quarantine for at least two weeks by BCPH. He also informed Ms. Szollosi that he was experiencing symptoms of COVID-19.

21. The Company approved Plaintiff's request to work remotely. However, both Mr. Szollosi and Plaintiff's direct supervisor encouraged Plaintiff to return to work early, despite BCPH's notice to Plaintiff and Plaintiff's exposure to and symptoms of the coronavirus. Plaintiff declined to disregard his obligations to contain the spread of the virus by returning to work early.

22. Plaintiff's partner, Jessica Miller, was eight and a-half months pregnant at the time, with a due date on April 6, 2020. Ms. Miller, like Plaintiff, was also sick with coronavirus symptoms.

23. On or about March 30, 2020, Plaintiff was advised by a health care provider to quarantine due to concerns related to COVID-19 until after the birth of his daughter.

24. Plaintiff provided the Company with a doctor's note advising him to quarantine due to possible exposure to COVID-19 until after the birth of his daughter.

25. Plaintiff's daughter was not born until April 12, 2020.

26. However, Plaintiff continued to work from home during his approved quarantine.

27. On April 7, 2020, without any prior notice, the Company informed Plaintiff he was going to be paid only a prorated portion of his salary for time he worked remotely during his quarantine.

28. That same day, on April 7, 2020, Plaintiff requested via email to be allowed to apply for leave under the EPSLA. Plaintiff asked, "[W]hat do we need to do to get this ball rolling?"

29. The Company did not respond to Plaintiff's April 7, 2020 email requesting leave under the EPSLA.

30. The Company also stopped assigning Plaintiff work after his request for leave under the EPSLA.

31. On April 14, 2020, Plaintiff sent the Company another email saying, in pertinent part:

> "Following up on this email I sent last week. … I also have not heard anything about requested family medical leave due to doctors orders I not return to work until we deliver our baby. I have provided letters from both doctors. Please let me know if you need more information."

32. The Company did not respond to Plaintiff's April 14, 2020 email following up on his leave under the EPSLA.

33. On April 16, 2020, Plaintiff sent the Company another email notifying them that his daughter's pediatrician advised that he not return to the worksite until May 5, 2020 due to concerns related to COVID-19.

34. On April 17, 2020, the Company's President, Mr. Szollosi, emailed Plaintiff terminating his employment and refusing to pay Plaintiff's requested paid leave under the EPSLA.

35. Mr. Szollosi told Plaintiff, via email, in pertinent part:

> "[T]he Corporation shall not provide paid leave to the Corporation's employees in connection with COVID-19 and employees shall be required to use accrued vacation time and/or sick days in connection with the Corporation's existing policies and procedures.
>
> As far as returning to work, due to the Corona[virus] slowing the economy substantially, we regretfully must inform you that we currently have no work for you to return to. During your absence from the company we have analyzed the market needs, … and we have come to the conclusion that every employee must be fully versed in their respective position and skill set. We revisited our recent review with you and came to the conclusion that although you have performed in some areas, the key requirements we depend on from our superintendents as managers are not fully developed and we need to depend on our supers to perform those skills and carry that load now more than ever. … ***Unfortunately, your family dynamic demanded you make a decision during a critical time of your career development*** and now the current environment deems it necessary that we focus on delivering product that we have built our distinguished reputation on and we have less time for focused training."

36. In other words, the Company terminated Plaintiff because he engaged in conduct public policy would encourage by quarantining as ordered by Boulder County Public Health and taking qualifying COVID-related leave under the FFCRA and the EPSLA.

## FIRST CLAIM FOR RELIEF
**(Retaliation in Violation of the Families First Coronavirus Response Act ("FFCRA"), the Emergency Paid Sick Leave Act ("EPSLA"), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3))**

37. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

38. On March 18, 2020, Congress enacted the FFCRA in response to the ongoing COVID-19 pandemic. The purpose of the FFCRA is "to provide relief to American workers and to promote public health." *See* FFCRA, Pub. L. No. 116-127, 134 Stat. 178 (2020).

39. Defendant is governed by the FFCRA in that it employs less than 500 employees, and it does not qualify for any exemption from the EPSLA for the paid leave Plaintiff qualified

7

for, requested, and took. *See, e.g.*, *id.*, § 5111(2), 134 Stat. at 201, (exempting small businesses with fewer than 50 employees *only* from the requirements of leave under § 5102(a)(5) when the imposition of leave due to the unavailability of childcare for employees' son or daughter as a result of the coronavirus would jeopardize the viability of the business as a going concern.).

40. The FFCRA contains both the Emergency Family and Medical Leave Act ("EFMLA"), and the EPSLA, *see id.*, § 5101, *et seq.* The EFMLA and the EPSLA are modeled after the Family and Medical Leave Act ("FMLA") to provide paid leave and other benefits to employees for various reasons related to COVID-19. *See also Kofler v. Sayde Steeves Cleaning Service, Inc.*, No. 8:20-cv-1460-T-33AEP, 2020 WL 5016902, at *2 (M.D. Fla. Aug. 25, 2020) (finding Plaintiff plausibly alleged protected activity under FFCRA in FLSA retaliation claim where Plaintiff requested leave under the EPSLA); *Stacey v. The ValCap Grp. LLC*, No 3:21-cv-01831-M, 2021 WL 6135486, at *2 (N.D. Tex. Dec. 27, 2021) (denying motion to dismiss EPSLA claim and concluding that the statute, by incorporating FLSA's enforcement provisions, includes a private right of action); *Haney-Filippone v. Agora Cyber Charter Sch.*, 538 F.Supp.3d 490, 493 n.2 (E.D. Pa. 2021) ("The U.S. Code and the Code of Federal Regulations make clear that Plaintiff has a private right of action ... under [the EPSLA].").

41. The EPSLA requires that covered employers provide paid sick leave to employees who are unable to work or telework due to one of five qualifying reasons related to COVID-19, including when the employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19. *See id.*, §§ 5102(a)(3), 5110(2), 134 Stat. at 195.

42. Plaintiff was advised by health care providers to quarantine due to concerns related to COVID-19, and Plaintiff informed Defendant of same on and prior to April 7, 2020 and April

8

16, 2020.  Prior to taking leave and/or as soon as practicable, Plaintiff additionally provided two doctor's notes to Defendant with appropriate notice and documentation advising that Plaintiff quarantine due to concerns related to COVID-19.  *See* 29 C.F.R. § 826.100(a)(1)-(4); 826.100(c).

43. An EPSLA-governed employer that violates the EPSLA's provisions has effectively violated the FLSA.  *Id.* § 5105, 134 Stat. at 197; *see also Colombe v. SGN, Inc.*, No. 5:20-CV-374, 2021 WL 1198304, at *3 (E.D. Ky. Mar. 29, 2021) (internal quotation marks and citation omitted) ("Conceptually, then, FFCRA retaliation [claims] may be brought under the FLSA.").

44. By requesting and taking leave due to Plaintiff's inability to work or telework as a result of being advised to quarantine due to COVID-19, Plaintiff engaged in statutorily protected activity under the FFCRA, in violation of the FLSA.  *See* 29 C.F.R. § 826.150(a); FFCRA, Pub. L. No. 116-127, § 5104, 134 Stat. 178, 196-97 (2020).

45. Defendant's retaliatory actions taken against Plaintiff after his request for and use of leave under the EPSLA, including Defendant's refusal to pay Plaintiff 80 hours of paid sick leave and its termination of Plaintiff's employment on April 17, 2020, were in retaliation for Plaintiff's request for and use of qualifying leave under the EPSLA.

46. Defendant's above-described conduct constitutes a willful violation of the protections and rights afforded employees under the FFCRA, EPSLA, and the FLSA.

47. Defendant's above-described actions have caused Plaintiff to incur economic and non-economic losses and entitled Plaintiff to the legal and equitable remedies provided by the enforcement provisions set forth in sections 29 U.S.C. §§ 216, 217, including, but not limited to,

lost wages and liquidated damages, attorneys' fees and costs of this action, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
**(Failure to Pay EPSLA Sick Leave, in violation of the Families First Coronavirus Response Act ("FFCRA"), the Emergency Paid Sick Leave Act ("EPSLA"), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 216, 217)**

48. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

49. Under the EPSLA, full-time employees who satisfy one or more of the conditions for leave are entitled to 80 hours of paid sick leave. *See* § 5102(b)(2), 134 Stat. at 196.

50. The EPSLA's enforcement mechanism adopts the penalties prescribed in the FLSA:

> (a) UNPAID SICK LEAVE. –An employer who violates section 5102 shall—
>
> (1) be considered to have failed to pay minimum wages in violation of section 6 of the [FLSA] …; and
>
> (2) be subject to the penalties described in sections 16 and 17 of [the FLSA] with respect to such violation.

51. The provisions of the FFCRA, and the EPSLA, entitled Plaintiff to paid sick leave for a qualifying COVID-related reason.

52. Defendant failed to pay Plaintiff qualifying COVID-related sick pay.

53. Defendant's above-described conduct constitutes a willful violation of the protections and rights afforded employees under the FFCRA, EPSLA, and the FLSA.

54. Defendant's above-described actions have caused Plaintiff to incur economic and non-economic losses and entitled Plaintiff to the legal and equitable remedies provided by the

enforcement provisions set forth in sections 29 U.S.C. §§ 216, 217, including, but not limited to, lost wages and liquidated damages, attorneys' fees and costs of this action, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Termination in Violation of Public Policy)

55. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

56. Defendant punished and retaliated against Plaintiff for engaging in conduct Colorado public policy would encourage when he quarantined and self-isolated pursuant to Boulder County Public Health's Order that he not go to work for at least two weeks after he stopped experiencing COVID-19 symptoms in March 2020.

57. The essence of the public-policy exception to at-will employment status is that an employee has a cognizable claim for wrongful discharge where the discharge contravenes a clear mandate of public policy. *Martin Marietta Corp. v. Lorenz*, 823 P.3d 100, 107 (Colo. 1992).

58. Claims for wrongful discharge under Colorado's public-policy exception have included termination of an employee for (1) refusal to participate in illegal activity; (2) the employee's refusal to forsake the performance of an important public duty or obligation; (3) the employee's refusal to forego the exercise of a job-related legal right or privilege; (4) the employee's whistleblowing activity or other conduct exposing the employer's wrongdoing; and (5) the employee's performance of an act that public policy would encourage under circumstances where retaliatory discharge is supported by evidence of employer's bad faith, malice or retaliation. *Id.*

59. C.R.S. § 25-1-506(3)(b) provides that local public health agencies may "establish, maintain, and enforce isolation and quarantine, … as the agency may find necessary for the protection of the public health." The BCPH's authority to protect the public's health and prevent any potential spread of COVID-19 was a public policy that truly impacted public health and safety; such that Defendant's termination of Plaintiff for complying with BCPH's requirements would negatively impact society at large and contravene Plaintiff's obligation as a citizen to contain the spread of the virus.

60. Defendant terminated Plaintiff because Plaintiff complied with his public duty to comply with BCPH's order to quarantine and self-isolate. When Defendant terminated Plaintiff's employment because he quarantined, Defendant was aware that Plaintiff's protected activity was consistent with Plaintiff's obligations under BCPH's order and Plaintiff's duties as a citizen.

61. Defendant's retaliation toward Plaintiff was willful and wanton and attended by circumstances of malice and reckless disregard for the rights of Plaintiff.

62. As a result of Defendant's retaliation toward Plaintiff, Plaintiff has suffered damages, including lost wages and benefits, garden-variety emotional pain and suffering, and he is entitled to such general and special damages, economic damages, and garden-variety emotional distress damages as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

A. All economic backpay losses incurred from April 17, 2020, through the date of trial, as well as front pay damages; as permitted by law;

B. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and humiliation;

C. Punitive damages, as permitted by law;

D. Plaintiff's unpaid leave entitlement under the EPSLA and FFCRA;

E. Liquidated damages, as permitted by law;

F. All other legal and equitable relief as may be appropriate to effectuate the purposes of U.S.C. § 215(a)(3), as permitted by law;

G. Attorneys' fees and costs of this action;

H. Pre-judgment and post-judgment interest at the highest lawful rate; and

I. Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 15th day of April, 2022.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Shelby Woods*
 Claire E. Hunter (39504)
 Shelby Woods (48606)
 HKM Employment Attorneys LLP
 730 17th Street, Suite 750
 Denver, Colorado 80202
 chunter@hkm.com
 swoods@hkm.com
 *Attorneys for Plaintiff Skyler Godfrey*